## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

| | |
|---|---|
| **THIRTY-FOUR MARKET PLACE, LLC**, | * |
| c/o Miles & Stockbridge, P.C. | |
| 100 Light Street | * |
| Baltimore, Maryland 21202 | |
| | * |
| Plaintiff, | |
| | * |
| v. | |
| | * |
| **ENGIE SERVICES, U.S., INC.** | |
| f/k/a OPTERRA ENERGY SERVICES, INC., | *    Case No. _____ |
| successor to BLUESTONE ENERGY SERVICES, LLC, | |
| 12980 Foster Drive, Suite 400 | * |
| Overland Park, Kansas 66213 | |
| | * |
| Serve On: | |
| Engie Services U.S., Inc. | * |
| c/o Resident Agent, | |
| Capitol Corporate Services, Inc. | * |
| 3206 Tower Oaks Boulevard, 4th Floor | |
| Rockville, Maryland 20852 | * |
| | |
| Defendant. | * |

\*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*     \*

## COMPLAINT

Plaintiff Thirty-Four Market Place, LLC ("TFMP" or "Owner"), through its undersigned counsel, brings this action against Defendant Engie Energy Services, U.S., Inc. f/k/a Opterra Energy Services, Inc., successor to Bluestone Energy Services, LLC ("Bluestone" or "Contractor") and states as follows:

### NATURE OF THE ACTION

1.      While installing a building automation and energy conservation system at TFMP's Power Plant Live! Property in March 2017, Bluestone caused a massive rupture to occur

1

in one of the building's major mechanical systems, resulting in substantial flooding and property damage to TFMP's property and that of its commercial tenants.

2.      Through this action, TFMP seeks to recover amounts incurred as a direct and proximate result of Bluestone's negligent and faulty work at the Property, including Bluestone's marketing and design of a defective and unsuitable building automation system.

## PARTIES

3.      Plaintiff Thirty-Four Market Place, LLC is a limited liability company organized under the laws of Maryland.

4.      Among other things, TFMP owns a multi-story commercial building located at 34 Market Place, Baltimore, Maryland 21202 (the "Building").  The building is part of the city's Power Plant Live! entertainment area.

5.      Defendant Engie Energy Services, U.S., Inc. ("Engie") is a business incorporated under the laws of Delaware, with its principal office located in Overland Park, Kansas.

6.      On or about August 30, 2015, TFMP entered into a Standard Lump Sum Agreement (the "Agreement") with Bluestone Energy Services, LLC.

7.      At the time that it entered into the Agreement, Bluestone Energy Services, LLC was a limited liability company organized under the laws of Delaware.

8.      On December 27, 2017, Bluestone merged with and into Opterra Energy Services, Inc. ("Opterra"), a business incorporated under the laws of Delaware, with principal place of business located in Kansas.

9.      On January 16, 2018, Opterra changed its name to Engie Energy Services, U.S., Inc.

10.     Through these corporate acts, Engie is the successor to Bluestone and is fully liable and responsible for Bluestone's liabilities and obligations to TFMP.

## JURISDICTION AND VENUE

11.     This Court properly exercises subject matter jurisdiction over this matter pursuant to 28 U.S.C. § 1332, because Plaintiff is a citizen of Maryland and Texas, Defendant is a citizen of Kansas and Delaware. No member of Plaintiff is a citizen of either Kansas or Delaware and the amount in controversy exceeds $75,000.00.

12.     This Court properly exercises personal jurisdiction over Defendant because this action arises out of Defendant's tortious conduct in Maryland and Defendant's contacts with Plaintiff in Maryland.  Personal jurisdiction is also proper based on the forum selection clause in the Parties' contract.

13.     Venue is proper in this District pursuant to 28 U.S.C. § 1391 because a substantial part of the events alleged occurred in Maryland.  Venue is also proper based on the forum selection clause in the Parties' contract.

14.     Pursuant to the Parties' contract, Plaintiff endeavored to resolve its claims through mediation, but Defendant failed to respond to Plaintiff's written request to mediate. Accordingly, Defendant has waived its right to demand mediation under the contract.

## FACTUAL ALLEGATIONS

15.     In the spring and summer of 2015, Bluestone marketed to TFMP a "turnkey" "energy conservation solution" which, Bluestone claimed, would allow TFMP to reduce the amount of energy used on its HVAC systems and save hundreds of thousands of dollars on TFMP's energy bills.

16.     As part of its marketing efforts, Bluestone prepared a "Technical Assistance Report that identified custom and prescriptive measures that would qualify for incentives under BG&E's Incentive program."

17.     TFMP reasonably relied upon Bluestone's representations in the Technical Assistance Report, as Bluestone held itself out to have specialized knowledge, experience, and expertise in energy conservation solutions for building mechanical and HVAC systems.

18.     After completing its Technical Assistance Report, Bluestone prepared a "Turnkey Proposal Energy Conservation Solutions" (the "Turnkey Proposal") for the Building.

19.     Bluestone proposed two principal 'solutions' for the Building: (a) to upgrade the Building's lighting and controls; and (b) to install a "Building Automation System" ("BAS") which would control, among other things, the Building's closed water loop system.

20.     A closed water loop system is a mechanical system designed to transfer heat (for air conditioning, heating, and other environmental processes) via the movement of water through pipes placed throughout the building.

21.     Closed water loop systems require a consistent flow of water through the systems to prevent freezing, burning, and to otherwise prevent rupturing of the system.

22.     Bluestone stated that the installation of the BAS "would allow set back, scheduling, and optimum start/stop strategies to be employed" in TFMP's operation of the closed water loop system, resulting in significant energy savings for TFMP.

23.     Bluestone projected that installation of the BAS would result in savings of over 1.2 million kilowatt hours of electricity per year, at a value exceeding $128,000 annually.

24.     TFMP reasonably relied upon Bluestone's representations in the Turnkey Proposal, as Bluestone held itself out to have specialized knowledge, experience, and expertise in energy conservation solutions for building mechanical systems.

25.     On or about August 30, 2015, TFMP and Bluestone entered into the Standard Lump Sum Agreement (the "Agreement").

26.     The Agreement incorporated the "Turnkey Proposal Energy Conservation Solutions", which it identifies as the "Scope of Work".  A copy of the Agreement, including the Scope of Work, is attached hereto as **Exhibit 1**.

27.     In exchange for Bluestone's performance of the Work, TFMP agreed to pay to Bluestone $477,526.00.

28.     Bluestone began its work at the Building on or about November 1, 2015.

29.     Beginning on November 1, 2015 and until March 20, 2017, Bluestone exclusively controlled the Building's mechanical systems.

30.     TFMP fully performed its obligations under the Agreement, including by making progress payments to Bluestone for its work on the Building.

31.     In December 2016, during Bluestone's installation of the BAS, a portion of the closed water loop system was damaged when Bluestone programmed the partially-installed BAS to slow the rate of water flow in the closed water loop system.

32.     Bluestone expressly agreed to take full responsibility for the damage caused by this December 2016 incident, and further stated that it would install a flow meter to measure water flow and ensure that such damage would not happen again.

33.     After the December 2016 incident, Bluestone continued to perform its work installing the BAS.

34.     On or about March 19, 2017, Bluestone again programmed the partially-installed BAS to slow the rate of water flow in the closed water loop system.

35.     By slowing the rate of water flow, Bluestone caused the closed water loop system to freeze.

36.     On March 19, 2017, a portion of the closed water loop system froze and caused a massive rupture in the system.

37.     The rupture occurred in the offices of a longstanding tenant of TFMP.

38.     The rupture caused thousands of gallons of water to flood the longstanding tenant's office space.

39.     TFMP personnel and contractors promptly responded to the flooding to prevent further damage to the building, to help salvage the tenant's property, to begin cleanup, remediation, and restoration activities, and to notify interested persons of the flooding.

40.     The flooding caused substantial damage to the Building and to property located in the Building, including the tenant's business files, furniture, and other property.

41.     The flooding caused the tenant's space to be fully unusable for more than 10 months and partly unusable for an additional 7 months, depriving TFMP of rent and other revenues from the tenant.

42.     The flooding also forced TFMP to provide and furnish temporary office space for the longstanding tenant.

43.     Having caused TFMP substantial damages, Bluestone stopped working on the Building on or about March 20, 2017.

44.     After Bluestone stopped working on the Building, TFMP was forced to repair the Building's extant mechanical systems and to install additional HVAC systems on the property.

6

## COUNT I
### Breach of Contract

45.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

46.     The Standard Lump Sum Agreement between Bluestone and TFMP is a valid and enforceable contract.

47.     TFMP fully performed its obligations under the contract.

48.     Bluestone breached the contract by, among other things, failing to perform all work described in the Agreement, by failing to perform the work in the manner described in the Agreement, and by failing to provide a fully-functional BAS to TFMP, as described in the Agreement.

49.     TFMP suffered damages as a direct and proximate result of Bluestone's breach of the Agreement.

## COUNT II
### Breach of Warranty

50.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

51.     In the Agreement, Bluestone expressly warranted, among other things, that:

a. Bluestone "is knowledgeable and experienced in providing services comparable to those necessary to complete the Work and with the needs and requirements for this type of Project";

b. Bluestone would perform the Work "in a manner consistent with a high level of care and skill with first rate and sound professional practices and procedures"; and

c. Bluestone "visited the site of the Project and has satisfied itself as to the assessability of and character of such site and the nature of the Work," "is

7

aware of the critical time restrictions for the Work," and is "able to furnish the plant, tools, material, supplies, equipment, management, supervision, and labor required to complete the Work and performance of its obligations under the [Agreement]…"

52.     Bluestone breached these warranties and others by, among other things, failing to provide services necessary to complete the Work, failing to perform its work with a high level of care and skill, and by failing to determine the adequacy of Bluestone's BAS for the Building.

53.     TFMP suffered damages as a direct and proximate result of Bluestone's breach of these warranties.

## COUNT III
## Negligent Misrepresentation

54.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

55.     Bluestone owed TFMP a duty of care with respect to Bluestone's Technical Assistance Report and "Turnkey Proposal Energy Conservation Solutions" for the Building.

56.     Bluestone intended that TFMP would rely on Bluestone's representations in the Technical Assistance Report and Turnkey Proposal.

57.     Among other things, Bluestone intended for TFMP to rely on Bluestone's statements that:

> a.   The Building Automation System designed by Bluestone could properly be installed on the Building's existing mechanical systems, including the closed water loop system;
>
> b.   TFMP would reduce the amount of energy used on its HVAC systems by installing Bluestone's Building Automation System;

    c.   TFMP would save hundreds of thousands of dollars on TFMP's energy bills by installing Bluestone's Building Automation System.

58.    Bluestone knew that TFMP would suffer injury by its reliance on these statements, if the statements proved to be false.

59.    TFMP reasonably and justifiably relied on Bluestone's statements in the Technical Assistance Report and Turnkey Proposal.

60.    Bluestone's statements in the Technical Assistance Report and Turnkey Proposal were false.

61.    Specifically, Bluestone's statements were false because Bluestone's BAS was not appropriate for the Building's mechanical and HVAC systems.

62.    Bluestone's statements regarding the energy conservation and financial benefits of the BAS were also false.

63.    TFMP suffered damages as a direct and proximate result of Bluestone's false representations.

### COUNT IV
### Negligence – Design of Building Automation System

64.    Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

65.    In designing the Building Automation System for TFMP, Bluestone owed TFMP a duty of care.

66.    Bluestone breached its duty of care to TFMP by designing a Building Automation System which was fundamentally incompatible with the Building's existing mechanical and HVAC systems.

67.    Among other things, Bluestone's design of the BAS was premised on TFMP realizing energy savings by slowing the rate of water flow in the closed water loop system.

However, slowing the rate of water flow in the system created unreasonable risks to the integrity and functionality of the system.

68.     Bluestone's negligent design of the BAS caused a portion of the closed water loop system to freeze, resulting in a massive rupture in the system and the release of thousands of gallons of water into the Building.

69.     TFMP suffered damages as a direct and proximate result of Bluestone's negligence.

## COUNT V
### Negligence – Programming of Building Automation System

70.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

71.     In programming the Building Automation System for TFMP, Bluestone owed TFMP a duty of care.

72.     Bluestone breached its duty of care to TFMP by programming the partially-installed BAS to slow the rate of water flow in the closed water loop system.

73.     Bluestone's negligent programming of the BAS caused a portion of the closed water loop system to freeze, resulting in a massive rupture in the system and the release of thousands of gallons of water into the Building.

74.     TFMP suffered damages as a direct and proximate result of Bluestone's negligence.

## COUNT VI
### Gross Negligence

75.     Plaintiff incorporates the foregoing paragraphs as if fully restated herein.

76.     Following the December 2016 incident (if not sooner), Bluestone knew that it was necessary to maintain a consistent flow of water through the closed water loop system to prevent freezing.

77.     Bluestone knew that freezing of the closed water loop system would cause a rupture of the system and release of substantial amounts of water.

78.     Bluestone knew that the closed water loop system passed through leased premises where the valuable property and business records of TFMP's tenants were stored.

79.     Bluestone knew that the release of substantial amounts of water in a commercial office space presents a clear risk of mold and other damage and, therefore, poses a risk to the safety of individuals working in and around the Building.

80.     Notwithstanding Bluestone's knowledge, Bluestone acted recklessly and with thoughtless disregard to the consequences of its actions when Bluestone, for the second time in only three months, failed to ensure a consistent flow of water through the closed water loop system.

81.     Bluestone's reckless and thoughtless management of the Building Automation System and the closed water loop system caused a portion of the closed water loop system to freeze, resulting in a massive rupture in the system and the release of thousands of gallons of water into the Building.

82.     TFMP suffered damages as a direct and proximate result of Bluestone's gross negligence.

WHEREFORE Plaintiff Thirty-Four Market Place, LLC demands judgment against Defendant Engie Energy Services, U.S., Inc. f/k/a Opterra Energy Services, Inc., successor to Bluestone Energy Services, LLC, in an amount in excess of $75,000, to be proven at trial, plus

reasonable attorney's fees and costs incurred by Plaintiff litigating this action, pre-judgment interest, post-judgment interest at the legal rate, and such other legal and equitable relief that this Court deems just and proper.

Respectfully submitted,

*/s/ Michael B. Brown*
Todd M. Reinecker (Fed. Bar No. 27082)
Michael B. Brown (Fed. Bar No. 19641)
MILES & STOCKBRIDGE P.C.
100 Light Street
Baltimore, Maryland 21202
410-727-6464
treinecker@milesstockbridge.com
mbbrown@milesstockbridge.com

*Attorneys for Plaintiff*
*Thirty-Four Market Place, LLC*